IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 7, 2003 Session

# TINA MARIE HUDGENS STAFFORD GRAY v. GLEN ALLEN GRAY

**Appeal from the Circuit Court for Rutherford County**
**No. 43532     J. S. Daniel, Judge**

---

**No. M2002-01365-COA-R3-CV - Filed July 31, 2003**

---

The trial court granted the parties a divorce, classified the husband's auto salvage business as his separate property, and divided the property the parties had acquired during their marriage. On appeal, the wife contends that the trial court erred by not considering the auto salvage business to be marital property, and by ordering a property division that was inequitable as to her. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and WILLIAM CHARLES LEE, SP. J., joined.

David L. Goad, Murfreesboro, Tennessee, for the appellant, Tina Marie Hudgens Stafford Gray.

John T. Blankenship, Murfreesboro, Tennessee, for the appellee Glen Allen Gray.

## OPINION

### I.  A FAILED MARRIAGE AND AN AILING BUSINESS

Tina Marie Hudgens and Glen Allen Gray began an intimate relationship in 1977. Both parties were married to other people at the time. In 1980, Ms. Gray gave birth to a daughter, Jamie Gray. After her birth, the parties began living together. One other child was born to the parties after their marriage.

Mr. Gray operated an auto parts business in Nashville. In 1984, he purchased an auto salvage yard in Smyrna now known as "Gray's Foreign Auto Parts and Salvage." The purchase price of $149,500 for the business and the six acre site on which it stood was paid through a business loan. Mr. Gray used a duplex on Deal Avenue that he owned as collateral for the loan.

The parties married in September of 1987. They acquired several pieces of real property during the marriage, including the marital home and three other houses. They also bought two parcels, of one acre and eight acres respectively, adjoining the salvage yard. Personal property acquired during the marriage included numerous vehicles, significant additions to the husband's collections of guns, knives, and coins, and antique furniture for the marital home.

Unfortunately, the marriage was a stormy one. Both parties were hot-tempered, and the record contains allegations of physical abuse that each leveled against the other. The husband suffered the first of several strokes in 1995. Afterward, he could not manage the business any more. His two adult sons from his first marriage took over the business, but it began to decline. Among the factors contributing to that decline were a significant decrease in prices for scrap steel, and a reduction in working capital that resulted from Mr. Gray's use of the cash flow for non-business expenses, such as private school tuition for his fourteen-year-old son and child support for an illegitimate daughter.

The wife moved out of the marital home with her children in the year 2000, and moved into the home of a man with whom she was having an intimate relationship. She removed much of the furniture from the marital home, as well as some of Mr. Gray's rings, and part of his coin collection and his knife collection. She sold the rings for $1,500, and the coins for between $1,500 and $2,000. Mr. Gray claimed that his wife also took $10,000 in cash from the marital home. Ms. Gray denied that she had done so.

## II. TRIAL PROCEEDINGS

On July 24, 2000, Ms. Gray filed a Petition for Absolute Divorce, on the ground of inappropriate marital conduct. Mr. Gray responded on August 8, with an Answer and Counter-Complaint for divorce. On August 25, the parties executed an Agreed Order, by which Ms. Gray was awarded custody of the children, and Mr. Gray agreed to pay child support of $888 a month in accordance with the Child Support Guidelines, as well as temporary spousal support of $612 per month. The husband subsequently moved the court to terminate spousal support, on the ground that the wife had attempted to perpetrate a fraud on the court by cohabiting with her paramour while attempting to get the husband to pay alimony.

After they separated, Mr. Gray sold the Deal Avenue duplex that he had used as collateral for the purchase of his business. Ms. Gray's signature was needed on the deed to the property, and she allegedly refused to sign unless he agreed to give her half of the proceeds. In any case, those proceeds were held in escrow until the time of the Agreed Order, when the trial court ordered Mr. Gray to pay his wife one-half of the total, or $15,800.

The final hearing on the divorce began on January 17, 2002. Much of the proof involved the fortunes and circumstances of the auto salvage business. Though there was a great disparity between the testimony of Tina Gray on one hand, and that of Glen Gray and his two sons from an earlier marriage on the other, all agreed that the business was in serious decline.

Ms. Gray testified that she made a significant contribution to the operation of the salvage business, including picking up and delivering parts, answering the telephone, sorting radiators, paying bills, and making out payroll checks. Mr. Gray and his two adult sons testified that her contribution was minimal. They testified in fact that her participation was detrimental to the business, because she fought with customers and employees, and frequently took money out of the cash register, without accounting for it to anybody.

An accountant testified that when he was hired in 1997 or 1998 to take over the books of the company, many of its records were missing or incomplete. He stated that the business earned a profit of $162,000 in 1995, $30,000 in 1999, and $32,000 in 2000, and suffered a loss of $19,000 in 2001. The accountant testified that no income tax return had been filed for the business since 1995. Tax liability for unfiled tax returns was estimated to be about $61,000. The business also had a debt of almost $57,000 for yellow pages advertisements from Bell South Advertising, as well as past due workers compensation premiums of over $5,000.

At the conclusion of the hearing, the court took the matter under advisement. The Final Decree of Divorce was filed on May 2, 2002. Both parties were granted a divorce, on the ground of inappropriate marital conduct. The wife was given custody of fourteen-year-old Glen Terry Gray, the only child subject to the court's jurisdiction, and the husband was ordered to pay $600 per month as child support. The wife's claim for alimony was denied, and the court further found that Mr. Gray was entitled to a credit in the amount of $7,956 for alimony he paid under the Agreed Order.

The trial court held that Gray's Foreign Auto Parts and Salvage was Mr. Gray's separate property, and not subject to division. Two separate parcels adjoining the business that were acquired during the course of the marriage were deemed to be marital property, as were four other parcels of real estate (including the marital home). Mr. Gray was ordered to have the two adjoining properties appraised, and to pay Ms. Gray one half of their value. The four other properties were ordered to be sold at auction to the highest bidder, with Ms. Gray to receive half of the net proceeds after adjustments. These included set-offs for the proceeds from the sale of the Deal Avenue duplex ($15,800), half of the value of the coin collection she took ($2,375), the value of the rings she sold ($1,500) and the value of the missing portion of Mr. Gray's knife collection ($2,000). Mr. Gray was made responsible for all the indebtedness incurred by his business, and Ms. Gray was made responsible for credit card indebtedness in the amount of $21,000 that she incurred after the parties' separation. This appeal followed.

### III. THE CLASSIFICATION OF THE BUSINESS

The only issues on appeal involve the division of property. The appellant argues that the trial court erred by classifying the auto salvage business as Mr. Gray's separate property, rather than as marital property. It is undisputed, however, that Mr. Gray acquired the business before the parties married, and thus it meets the definition of separate property found in Tenn. Code Ann. § 36-4-121(b)(2), as "[a]ll real and personal property owned by a spouse before marriage . . . ."

Appellant notes, however, that there is an important qualifier to this general definition, which includes as marital property "income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation . . . ."

Even if we put aside the disputed questions as to the nature and extent of Ms. Gray's contribution to the business, we are still left with the problem of determining whether there has been any net appreciation in its value since its purchase by Mr. Gray for $149,500. Apparently no appraisal of the business has ever been conducted, and the only evidence of its current value is Mr. Gray's testimony that it is worth $200,000. The testimony does not indicate whether his estimate was based on its value as a going concern or its liquidation value.

More importantly, there is no indication that his estimate factored in the staggering debts of over $120,000 that the accountant testified to. We note that the court made him responsible for all the debts related to the business, including the past due income taxes, which would otherwise have been a joint obligation of the parties. We also note that the $200,000 estimate apparently includes the two adjoining properties that the trial court ruled to be marital property, and divided between the parties.

After thoroughly examining the record, including the hearing transcripts and the parties' statements in compliance with Rule 12.01 and 12.02, it appears to us that the trial court did not err in determining that Ms. Gray is not entitled to any portion of Gray's Foreign Auto Parts and Salvage, other than the one-half share in the after-acquired real property that the trial court awarded her.

## IV. THE EQUITY OF THE PROPERTY DIVISION

The appellant argues that even if we take the auto salvage business out of the equation, the final division of the marital property was inequitable as to her. She points to the factors which Tenn. Code Ann. § 36-4-121(c) requires the trial court to consider when dividing marital property, and which she contends would support a division more heavily weighted in her favor, such as the duration of the marriage, her lack of formal education and her lack of job skills.

It appears to us, however, the trial court's basic decision to divide the marital property equally between the parties was equitable in light of some of the other factors found in the same statute, such as the age and health of the husband, his reduced earning capacity as a result of his stroke-induced disability, and the precarious condition of the business awarded to him as his separate property.

Further, we find no inequity in the various set-offs against the wife's share that the trial court decreed. Though Ms. Gray may have felt that she was entitled to the property and funds at issue, there are sound legal reasons for restoring those assets to the estate. Her misappropriation of the knives, coins and rings do not require much comment, since they did not belong to her, and it would clearly be inequitable to let her retain the benefit she obtained by taking and selling them.

The set-off for the alimony payments is consistent with the intentions of the legislature, as expressed in Tenn. Code Ann. § 36-5-101(a)(3), which reads,

> (3) In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is thereby raised that:
>
> (A) The third person is contributing to the support of the alimony recipient and the alimony recipient therefore does not need the amount of support previously awarded, and the court therefore should suspend all or part of the alimony obligation of the former spouse;  or
>
> (B) The third person is receiving support from the alimony recipient and the alimony recipient therefore does not need the amount of alimony previously awarded and the court therefore should suspend all or part of the alimony obligation of the former spouse.

The evidence seems to indicate that Ms. Gray moved directly into her paramour's home after leaving the marital home.  There is no proof in the record to rebut the presumption that her paramour was contributing to her support, and thus that she was in no need of support from her estranged husband.

Further, Mr. Gray acquired the Deal Avenue duplex long before he established a relationship with Ms. Gray, and thus it must be considered to be his separate property.  *See* Tenn. Code Ann. § 36-4-121(b)(2).  The fact that the buyer required the wife's signature on the deed before purchasing it did not give her any interest in it or right to the proceeds from its sale.

It is true that both the alimony pendente lite and the division of the proceeds from the sale of the duplex were provisions in an Agreed Order, signed by the attorneys for the parties as well as by the trial judge.  There is nothing inherently invalid in such an order, but like all interlocutory orders, it is subject to revision at any time prior to the entry of a final judgment.  *See* Rule 54.02, Tenn. R. Civ. P.  In this case, the record contains sufficient evidence that it would have been inequitable for Ms. Gray to retain either of those benefits.

Finally, as appellee points out, the record contains testimony as to other actions of the appellant for which it might have been equitable for the trial court to assess additional set-offs against her.  These include the $10,000 she allegedly took from the marital home when she left, the business records she took at the same time, and the destruction and damage of over $46,000 that she caused by gutting one of the rental homes in the marital estate, as part of an ill-advised and poorly thought-out project of renovation.  However, the trial judge chose not to penalize Ms. Gray for these actions, and we will not second-guess his decision.

## V.

The decree of the trial court is affirmed. Remand this cause to the Circuit Court of Rutherford County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Tina Marie Hudgens Gray.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.